# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | |
|---|---|
| SETH DAW, an individual,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No: 26-1893 |

## COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT

Plaintiff SETH DAW ("Plaintiff" or "Mr. Daw"), by and through undersigned counsel, brings this action against Defendant the UNITED STATES OF AMERICA (the "United States" or "Defendant"), and alleges as follows:

## I. NATURE OF THE ACTION

1. This is a civil action for damages brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 (the "FTCA"), arising from the conduct of a United States Border Patrol agent acting within the course and scope of his federal employment.
2. On September 9, 2025, at Mr. Daw's residence in El Paso, Texas, United States Border Patrol Agent Jorge Muñoz ("Agent Muñoz") entered Mr. Daw's home, opened the door of a small bathroom in which Mr. Daw's dog had been secured, and shot and killed the dog. Agent Muñoz fired the fatal shot at the animal from a distance of approximately eighteen feet, after the dog had moved well away from the bathroom and was moving through the

home—conduct that was unauthorized, unjustified, and beyond the scope of the limited consent Mr. Daw had given.

3. After Agent Muñoz killed Mr. Daw's dog, other Border Patrol agents physically touched and grabbed Mr. Daw causing bruising on his body, and, though Mr. Daw was unarmed, Agent Muñoz then pointed his loaded firearm at Mr. Daw, causing him to fear that he would suffer bodily injury.

1. Mr. Daw seeks compensatory damages, costs, and all other relief permitted under the FTCA and applicable Texas law for the loss of his personal property, the damage to and loss of use of the residence he occupied as a tenant in lawful possession, and the physical injuries he sustained at the hands of federal agents.

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1346(b)(1), which vests the district courts with exclusive jurisdiction over civil actions against the United States for money damages for injury to or loss of property, or personal injury, caused by the negligent or wrongful act or omission of an employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

3. The acts and omissions complained of occurred in El Paso County, Texas. Accordingly, the substantive law of the State of Texas governs the United States' liability under 28 U.S.C. § 1346(b)(1). The conduct complained of is not shielded from liability by the discretionary-function exception, 28 U.S.C. § 2680(a). No federal statute, regulation, or policy conferred on Agent Muñoz or the other agents any authority to conduct a

warrantless, nonconsensual search of the residence, to enter a portion of the home beyond the scope of the consent given, or to use unjustified deadly force against Mr. Daw's property or unreasonable force against his person. Conduct that violates the Fourth Amendment and exceeds the limits of a citizen's consent is neither a permissible exercise of judgment nor the kind of policy-driven decision the discretionary-function exception was designed to protect.

4. Plaintiff has exhausted his administrative remedies as required by 28 U.S.C. § 2675(a). Plaintiff presented an administrative claim to U.S. Customs and Border Protection by submitting a Standard Form 95 (Claim for Damage, Injury, or Death) dated October 20, 2025, together with supporting and supplemental documentation, which the agency received on November 12, 2025. The claim described the September 9, 2025, incident and sought a sum certain of $550,000, allocated as $300,000 for property damage and $250,000 for personal injury.

5. By written notice dated May 20, 2026, signed by the Deputy Chief of the U.S. Border Patrol, the agency denied Plaintiff's administrative claim in its entirety. The denial notified Plaintiff that he could file suit in an appropriate United States District Court not later than six months after the date of the notification, pursuant to 28 C.F.R. § 14.9(a). This action is timely filed within that six-month period and within the period permitted by 28 U.S.C. § 2401(b). The agency's final denial satisfies the exhaustion requirement of 28 U.S.C. § 2675(a), and this Court's review of the claim is *de novo*.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1402(b) because the acts and omissions complained of occurred in this judicial district and because Plaintiff resides in

this judicial district. Venue is proper in the El Paso Division because the events giving rise to this action occurred in El Paso County, Texas.

## III. PARTIES

7. Plaintiff Seth Daw is a natural person and, at all relevant times, was a resident of El Paso County, Texas. At all relevant times, Mr. Daw was the owner of the dog, Chop, that is the subject of this action and occupied the residence located at 4424 Thrush Way, El Paso, Texas, as a tenant in lawful possession, with the right to exclude others from the premises.
8. Defendant United States of America is the only proper defendant in an action brought under the FTCA. See 28 U.S.C. §§ 1346(b), 2679(b)(1). At all relevant times, U.S. Customs and Border Protection ("CBP") and the U.S. Border Patrol were components or agencies of the United States, and the agents described herein were employees of the United States acting within the course and scope of their federal employment.
9. Agent Jorge Muñoz was, at all relevant times, a United States Border Patrol agent acting within the course and scope of his employment with the United States. Agent Muñoz is identified herein as the federal employee whose conduct gives rise to this action. He is not named as a defendant. The United States is substituted as the sole defendant pursuant to 28 U.S.C. § 2679(b)(1) and (d). Agent Muñoz, and the other Border Patrol agents present at the scene, were at all relevant times "investigative or law enforcement officers" within the meaning of 28 U.S.C. § 2680(h).

## IV. FACTUAL ALLEGATIONS

10. At all relevant times, Mr. Daw occupied his residence at 4424 Thrush Way, El Paso, Texas (hereinafter "the residence"), as a tenant in lawful possession, where he lived alone with his seven-year-old dog, Chop. Mr. Daw works as a professional home inspector. Mr. Daw

intended to purchase the residence and had invested substantial time, labor, and money in renovating and improving it.

11. On the morning of Tuesday, September 9, 2025, several Border Patrol agents knocked on the door of Mr. Daw's residence. Mr. Daw answered, and the agents told him they were present because they had received a tip that illegal immigrants were at his residence.
12. Prior to September 9, 2025, Mr. Daw had been renovating the residence. Because of this, there were no shutters or blinds inside the residence at that time. Anyone who walked up to the residence windows, both in the front of the house as well as the sides of the house (where Mr. Daw's bedroom was located), could clearly see into the residence.
13. The only occupants in the residence on the morning of September 9, 2025, were Mr. Daw and his dog, Chop.
14. The agents asked Mr. Daw whether they could come inside and search the home. Mr. Daw told the agents that would be fine, but stated that he was first going to secure his dog in the bathroom.
15. Mr. Daw then placed Chop in the entryway bathroom. He let the agents inside, showed them where Chop was located, and expressly told the agents that if they wished to search the bathroom, they should let him know and he would move his dog. Mr. Daw's consent to search the residence did not extend to the bathroom in which Chop was secured.
16. Everyone then walked back outside the front of the residence.
17. The agents then asked to see Mr. Daw's identification. When this happened, Mr. Daw heard an agent say something to the effect of, "his ID is in his truck."
18. Because Mr. Daw's driver's license was in fact in his truck, which was parked outside, Mr. Daw walked toward his truck retrieve it. Mr. Daw's truck was not locked, and the agent's

remark about his ID being in the truck led Mr. Daw to believe the agents had searched his truck prior to knocking on his door.

19. Mr. Daw was never asked for consent, and did not consent to any agent searching his truck.

20. As Mr. Daw went to retrieve his identification, Agent Muñoz separated from the group and re-entered the residence alone.

21. Within approximately one minute, Mr. Daw heard a gunshot from inside the home and began to run back into his house. Agents then attempted to physically restrain him, grabbing him with enough force to leave bruising on his arms.

22. As Mr. Daw attempted to re-enter his home, Agent Muñoz pointed his firearm at Mr. Daw. Mr. Daw reasonably believed that Agent Muñoz was going to shoot him and was placed in imminent fear of bodily harm.

23. At all relevant times during this encounter, Mr. Daw was unarmed, was compliant with the agents' instructions, made no threatening movement, and posed no threat to the safety of any agent. The agents had no warrant, and no exigent circumstances existed. The force used to restrain Mr. Daw, and Agent Muñoz's act of pointing a loaded firearm at him, were unnecessary, objectively unreasonable, and unjustified under the circumstances.

24. Inside, Mr. Daw saw large amounts of blood throughout the living area of his home. He then found Chop, who had been shot and had made his way to a window nook in the kitchen.

25. Mr. Daw was distraught. He attempted to hold his hand over Chop's wound as the dog lay whimpering in pain. Mr. Daw called his father, Paul, who lived nearby and quickly arrived at the residence. Mr. Daw asked the agents for help, but they stood by and ignored his pleas.

26. Paul called 911 when he arrived on scene. It took approximately forty-five minutes for Chop to die. Mr. Daw sat with and held his dog as he died.

27. Officer Juliana Ortiz of El Paso Animal Services responded to the scene and prepared a report identifying other officers present at the residence, including J. Fowler, D. Candors, and supervisor J. Rivera. A CBP Office of Professional Responsibility agent also responded to the residence.

28. A post-incident examination of the residence establishes that the conduct of Agent Muñoz was unjustified. The bathroom door behind which Chop was secured is narrow and opens inward. The location where Chop was shot, as evidenced by physical evidence in the home, is approximately eighteen feet from that bathroom door.

29. There was no blood or spatter near the bathroom entrance. All visible blood was located in the living area and the kitchen. The physical evidence is consistent with Agent Muñoz entering the home, proceeding directly to the bathroom, opening the door wide enough to allow Chop to exit, and then shooting Chop only after the dog had moved approximately eighteen feet away from the bathroom.

30. Had Agent Muñoz perceived any threat from Chop upon opening the bathroom door, he could have simply closed the inward-opening door. To allow Chop to exit the bathroom at all, Agent Muñoz would have had to push the door inward, toward Chop.

31. The physical evidence is inconsistent with any claim that Agent Muñoz fired in response to an aggressive or charging animal, which would be expected to have occurred at or near the bathroom door rather than approximately eighteen feet away.

32. Chop had never had any issues with people and there have never been any reports to Animal Protection or municipal health authorities about him.

33. Agents never found any illegal immigrants at the residence. After Chop was shot, agents also failed to properly secure the residence as other individuals who arrived on scene were allowed to enter the residence.

34. Paul attempted to speak to the supervisor on scene about what had happened. The supervisor told Paul he needed a minute to go in to figure out what happened, and he would come back out to speak to him.

35. After some time passed, Paul asked the other agents what happened to the supervisor. The other agents informed Paul the supervisor had to leave for court. After the agents left the residence, Paul drove around the corner of the residence and saw the supervisor sitting in his car on a different street. The supervisor was not at court and failed to ever communicate with Paul or answer any of his questions.

36. When questioned about what had happened, at least one agent on scene admitted to Paul something to the effect that they had made a big mistake. When Paul questioned another agent, a tall Hispanic man (approximately 6'3", 225 lbs., wearing a bulletproof vest), and Paul demanded to know what happened and stated they had made a big mistake shooting Chop, the agent responded, "well obviously."

37. Agent Muñoz did not have authorization or consent to enter the bathroom. Mr. Daw had expressly conditioned any search of the bathroom on his being permitted to move Chop first. By entering the bathroom and opening its door without notifying Mr. Daw, Agent Muñoz exceeded the scope of the consent given and entered a portion of the residence he had no lawful authority or permission to enter.

38. Agent Muñoz acted without a warrant and without any exigency. His warrantless entry into and search of the bathroom was without Mr. Daw's consent or authorization and exceeded

the scope of the limited consent granted by Mr. Daw. Such conduct would constitute an unreasonable search under Fourth Amendment principles and demonstrates that Agent Muñoz acted outside any lawful discretionary authority.

39. As a direct and proximate result of Agent Muñoz's conduct, Mr. Daw lost his dog, suffered physical injury in the form of bruising, and was placed in fear for his life. Mr. Daw also suffered the loss of personal property and the loss of use of the residence he occupied. Mr. Daw had devoted substantial time and financial resources to renovating and improving the home, which he intended to purchase and make his own. Since the incident, Mr. Daw has been unable to occupy the residence and has not spent a single night there.

## V. CLAIMS FOR RELIEF

### COUNT ONE
### Assault and Battery
### (Against the United States)

40. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

41. The Border Patrol agents present at the scene were "investigative or law enforcement officers" within the meaning of 28 U.S.C. § 2680(h). Accordingly, the United States has waived sovereign immunity for claims of assault and battery arising out of their conduct.

42. Agents acting within the course and scope of their federal employment intentionally made harmful or offensive physical contact with Mr. Daw, without his consent, when they grabbed and restrained him with sufficient force to cause bruising to his arms. Because Mr. Daw was unarmed, compliant, and posed no threat, the force used against him was objectively unreasonable and unnecessary. Any privilege to use reasonable force was thereby exceeded, and the agents' conduct constitutes a battery under the law of Texas.

43. Agent Muñoz, acting within the course and scope of his federal employment, intentionally pointed his firearm at Mr. Daw, thereby intentionally threatening Mr. Daw with imminent bodily injury and placing Mr. Daw in reasonable and imminent apprehension of harmful or offensive contact.

44. A private person who, under like circumstances, engaged in such conduct would be liable for assault and battery under the law of Texas. *See City of Watauga v. Gordon*, 434 S.W.3d 586, 589, 593 (Tex. 2014); Tex. Penal Code § 22.01(a). The United States is therefore liable to Mr. Daw under 28 U.S.C. § 1346(b)(1) and § 2680(h).

45. As a direct and proximate result, Mr. Daw suffered physical injury, pain, and mental anguish arising from the assault and battery, in an amount to be proven at trial.

## COUNT TWO

### Trespass to and Destruction of Personal Property
### (Conversion Pleaded in the Alternative)
### (Against the United States)

46. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

47. Under Texas law, a dog is the personal property of its owner. At all relevant times, Mr. Daw owned Chop and had the right to possess him.

48. Agent Muñoz, acting within the course and scope of his federal employment, intentionally and wrongfully injured and destroyed Mr. Daw's personal property by shooting and killing Chop, without lawful justification and without Mr. Daw's consent, permanently depriving Mr. Daw of his property.

49. Chop was never seized, taken into custody, or otherwise detained by any agent or officer of the United States; the injury arose from the destruction of the property, not from any detention of it.

50. In the alternative, by the same conduct Agent Muñoz wrongfully exercised dominion and control over Mr. Daw's property, to the exclusion of and inconsistent with Mr. Daw's rights as owner, and thereby converted it.

51. No imminent danger, and no real or apparent necessity, justified the killing of Chop. As the physical evidence demonstrates, Chop was shot approximately eighteen feet from the bathroom after the dog had moved away, and the inward-opening bathroom door could have been closed had Agent Muñoz perceived any threat; the killing was therefore neither necessary nor privileged.

52. Chop was a seven-year-old, well-trained dog. He was obedient to Mr. Daw's commands and served as a watchdog at the residence, alerting to the approach and arrival of persons and providing protection for the home and Mr. Daw's belongings during the renovation. Chop's training, obedience, and protective and watch services gave him a special and pecuniary value to Mr. Daw beyond any market value.

53. A private person who, under like circumstances, killed another's dog without justification would be liable to the owner under the law of Texas. The United States is therefore liable to Mr. Daw under 28 U.S.C. § 1346(b)(1).

54. As a direct and proximate result, Mr. Daw has been damaged in an amount to be proven at trial, including the market value of Chop or, to the extent Chop had no readily ascertainable market value, his special or pecuniary value to Mr. Daw as measured by his usefulness and services, together with other damages recoverable under Texas law. *See Heiligmann v.*

*Rose*, 81 Tex. 222, 16 S.W. 931, 932 (1891); *Strickland v. Medlen*, 397 S.W.3d 184, 188 (Tex. 2013).

**<u>COUNT THREE</u>**

**Trespass to Real Property**
**(Against the United States)**

55. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

56. Under Texas law, the elements of trespass to real property are (1) entry, (2) onto the property of another, (3) without the property owner's consent or authorization. *See Envtl. Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 419 (Tex. 2015). The tort protects the right of possession. A plaintiff in lawful possession of the premises may maintain the action, and proof of title is not required.

57. At all relevant times, Mr. Daw occupied the residence as a tenant in lawful possession and had the right of possession and the right to exclude others from the premises.

58. Mr. Daw's consent to the agents' entry into the residence was limited and expressly excluded the bathroom in which Chop was secured, which Mr. Daw conditioned on being permitted to move his dog first.

59. Agent Muñoz, acting within the course and scope of his federal employment, intentionally entered a portion of the residence—the bathroom—without consent and beyond the scope of any consent given, and opened the bathroom door without authorization. This entry was an unauthorized and unlawful physical intrusion upon the premises Mr. Daw lawfully possessed. The entry was physical, intentional, and voluntary, and was made without Mr. Daw's consent or authorization. It is immaterial whether Agent Muñoz intended to commit

a trespass or was aware of Mr. Daw's possessory interest; the only relevant intent is the intent to enter, which is established here.

60. A private person who, under like circumstances, entered premises in another's lawful possession beyond the scope of consent would be liable for trespass under the law of Texas. The United States is therefore liable to Mr. Daw under 28 U.S.C. § 1346(b)(1).

61. As a direct and proximate result, Mr. Daw has suffered damages, including the loss of use of the premises he lawfully occupied and the value of his labor and improvements to the extent not otherwise compensated, in an amount to be proven at trial.

## COUNT FOUR

**Negligence (Pleaded in the Alternative)**
**(Against the United States)**

62. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

63. In the alternative to the intentional conduct alleged above, the agents owed Mr. Daw a duty to exercise reasonable care in conducting the consensual search of the residence, including a duty to avoid the unjustified use of deadly force against his property and to avoid causing him physical harm.

64. Agents acting within the course and scope of their federal employment breached that duty, including by entering the bathroom and discharging a firearm at Mr. Daw's dog under circumstances presenting no reasonable justification, and by using unreasonable force against Mr. Daw.

65. A private person who, under like circumstances, engaged in such conduct would be liable for negligence under the law of Texas. The United States is therefore liable to Mr. Daw under 28 U.S.C. § 1346(b)(1).

66. As a direct and proximate result of this negligence, Mr. Daw suffered the damages described herein, in an amount to be proven at trial.

## VI. DAMAGES

67. As a direct and proximate result of the conduct described above, Mr. Daw has sustained damages, which he seeks to recover to the full extent permitted by the FTCA and Texas law. With respect to personal injury, Mr. Daw seeks damages for the physical injury, pain, and mental anguish caused by the assault and battery, including the bruising inflicted when agents restrained him and the fear and distress caused when Agent Muñoz pointed a firearm at him.

68. With respect to property, Mr. Daw seeks the market or special value of his dog, Chop; the reasonable value of the labor he invested in improving the residence, estimated at approximately $20,800 based on approximately 416 hours at $50 per hour; and damages for the loss of use of the premises he lawfully occupied and the lost benefit of his improvements, to the extent such losses have not otherwise been compensated. Mr. Daw does not seek to recover any amount for which he has already been made whole.

69. Mr. Daw timely presented his administrative claim in the sum certain of $550,000, allocated as $300,000 for property damage and $250,000 for personal injury. Pursuant to 28 U.S.C. § 2675(b), Plaintiff does not seek damages in this action in excess of the amount of his administrative claim, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim, or upon allegation and proof of intervening facts. Plaintiff does not seek prejudgment interest or punitive damages, which are not recoverable against the United States under 28 U.S.C. § 2674.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Seth Daw respectfully requests that the Court enter judgment in his favor and against the United States and award the following relief:

A. Compensatory damages in an amount to be proven at trial, not to exceed $550,000, consistent with Plaintiff's administrative claim and 28 U.S.C. § 2675(b), to the full extent permitted by the Federal Tort Claims Act and applicable Texas law;

B. Costs of suit, to the extent recoverable against the United States;

C. Post-judgment interest as permitted by law; and

D. Such other and further relief as the Court deems just and proper.

## VIII. DEMAND

Plaintiff acknowledges that actions under the Federal Tort Claims Act are tried to the Court without a jury pursuant to 28 U.S.C. § 2402, and accordingly does not demand a jury.

DATED: ______________, 2026

Respectfully submitted,

**SINGLETON SCHREIBER, LLP**

/s/ Marisa A. Ong
**MARISA A. ONG**
Senior Counsel
105 W. Griggs Ave.
Las Cruces, NM 88001
Telephone: 575-405-5192
mong@singletonschreiber.com

**Attorney for Plaintiff Seth Daw**